DECISION AND JOURNAL ENTRY
Appellants Stephen Fox and Heather Fox appeal separately from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that granted permanent custody of their children, Stephen Fox, Jr. and Kali Fox, to the Wayne County Children Services Board (CSB). This court affirms the judgment of the juvenile court.
Stephen Fox and Heather Fox are the parents of Stephen Fox, Jr., born August 7, 1994, and Kali Fox, born November 10, 1992. On April 22, 1997, CSB filed separate complaints alleging Kali to be neglected and Stephen to be dependent. A guardian ad litem was appointed for the children on May 5, 1997. An adjudicatory hearing was held on June 11, 1997 at which time the complaint regarding Kali was amended to an allegation of dependency. Both children were adjudicated to be dependent on June 12, 1997 and placed under the protective supervision of CSB. A case plan was developed and made a part of the order of the court. On August 29, 1997, CSB filed a motion for emergency custody, indicating that a recently-born sibling of the children tested positive for cocaine and that the father had been indicted for trafficking in cocaine. The motion was granted. At the conclusion of the shelter care hearing on September 2, 1997 the children were placed in the temporary care of Jill Robinson, maternal grandmother. The children were removed from the grandmother's home, however, on September 17, 1997 because she was unable to care for them. On November 12, 1997 the juvenile court continued temporary custody in CSB until May 12, 1998. The judgment entry indicated that the parents were currently separated and substance abuse assessments had not been completed. On May 4, 1998 temporary custody was extended until November 12, 1998. The judgment entry noted that Mr. Fox was in prison and the whereabouts of Mrs. Fox were unknown. On November 3, 1998, the juvenile court again extended temporary custody until May 12, 1999. The mother had not completed the case plan, her whereabouts were unknown and the father was incarcerated. On April 12, 1999, CSB filed a motion for permanent custody of the children, pursuant to R.C. 2151.413. Hearings were scheduled to commence on September 16, 1999, but Mr. Fox was incarcerated for allegedly violating terms of parole[1] and Mrs. Fox was also incarcerated. The matter was continued. After a hearing conducted on March 2, March 3, March 22, and April 5, 2000, the juvenile court terminated Appellants' parental rights and awarded permanent custody to CSB on May 1, 2000.
Each parent filed a notice of appeal from the final judgment of the juvenile court. The cases were consolidated by order of this court for purposes of preparing the record, briefs, and oral argument. Each Appellant, by separate counsel, assigned six errors for review. Four of the errors of each Appellant are of such similarity that they may be addressed together. The others will be addressed separately.
 Heather Fox's Assignment of Error I Stephen Fox's Assignment of Error I The Trial Court erred as a matter of law to the prejudice of the parents by allowing the guardian ad litem to participate at the hearing as attorney for the children, without formal appointment as their attorney and a ruling as to possible conflict of roles.
By this assignment of error, Appellants assert error in allowing the guardian ad litem to cross examine witnesses at the hearing because she became, in effect, "an advocate for the state." This assignment of error is without merit.
A guardian ad litem is a party to the proceedings. Juv.R. 2(X). She may participate accordingly. Juv.R. 34(B)(3).
In essence, Appellants' argument is that they were not happy with the course chosen by the guardian ad litem. It is well established that the role of a guardian ad litem is "to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest." In reBaby Girl Baxter (1985), 17 Ohio St.3d 229, 232. There is no evidence in the record before this court that the guardian adlitem did anything other than just that. Nor is there any indication in the record of a conflict between the children's wishes and what was legally in their best interest. Indeed, the record indicates that the guardian ad litem was actively involved in participating in a manner which she felt was in the best interest of the children. The fact that she elicited testimony that was contrary to the interests of the parents or eventually recommended the termination of parental rights does not constitute legal error. Furthermore, no objection to the participation by the guardian ad litem was raised below. Consequently, Appellants have waived any error in regard to the participation of the guardian ad litem at the hearing. This assignment of error is overruled.
 Heather Fox's Assignment of Error II Steven Fox's Assignment of Error II The Trial Court erred as a matter of law by allowing the report and recommendation of the guardian ad litem of the children filed after the hearing for the reasons that such violated R.C. 2151.414(C) and due process.
Appellants maintain that the trial court erred when it allowed the report of the guardian ad litem to be filed after the conclusion of the hearing regarding permanent custody. The hearing on the motion for permanent custody in this case was conducted on March 2, March 3, March 22, and April 5, 2000. The guardian ad litem filed a preliminary report on March 8, 2000 in which she requested leave to file a final report and recommendation after the hearing was completed. At the conclusion of the hearing and after open discussion with all parties, the trial court indicated that the final report of the guardian ad litem would be submitted by April 19, 2000, two weeks after the conclusion of the hearing, and that closing arguments of the parties could be submitted in writing by April 28, 2000. Appellants argue that the trial court erred when it accepted the guardian ad litem's report two weeks after the conclusion of the hearing regarding permanent custody and before final written closing arguments were due to be filed.
R.C. 2151.414(C) provides in relevant part:
 A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section * * * .
The record reveals that neither of the Appellants objected to the early written request by the guardian ad litem to file her report subsequent to the conclusion of the hearing. Nor did they object at the conclusion of the hearing itself when the timetable was being established by the trial court. Consequently, because Appellants failed to raise the issue below, they have waived any error in regard to the time of the filing of the final report of the guardian ad litem. SeeIn the Matter of: Artia Gibson, Capriss Gibson, Deon GibsonMarsheri Jenkins, Dvonia Gibson (Feb. 10, 2000), Cuyahoga App. Nos. 75810, 75811, 75812, 75813, 75814, 76032, unreported, 2000 Ohio App. LEXIS 459, at *12-13. Accordingly, this assignment of error is overruled.
 Heather Fox's Assignment of Error III Stephen Fox's Assignment of Error III The Trial Court erred as matter of law by admitting into evidence the expert opinions of state's psychologist because they were not based upon facts or data perceived by the expert in violation of Rule 703 of the Ohio Rules of Evidence.
Appellants contend that the trial court erred, in violation of Evid.R. 703, when it allowed the expert opinions of the state's psychologist into evidence because they were not based, in major part, on facts or data perceived by the expert. The argument is without merit.
Evid.R. 703 provides:
 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing.
In State v. Solomon (1991), 59 Ohio St.3d 124, syllabus, the Ohio Supreme Court held in regard to the requirements of Evid.R. 703:
 Where an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied.
(Emphasis added.)
Appellants concede that the opinion of the psychologist was based, at least in part, upon personal observations of facts or data in evidence, but contend that Evid.R. 703 requires her to state that her opinions were based "in major part" on facts or data perceived by her.
The psychologist testified as to her opinions obtained through two psychological assessments regarding behavioral and emotional problems of the children. The first assessment was conducted in February, 1998 and the second in June, 1999. In arriving at her opinions for the first assessment she testified that she obtained some background information from two caseworkers, a foster parent, and records from CSB. These individuals did not testify, nor were the records from CSB placed in evidence. However, the psychologist further testified that her opinion was also based upon personal interviews with the two children, consultation with the current caseworker who did testify at the hearing, interviews with foster parents, interviews and observation of the children with their parents, interviews and observations of the children with their foster parents, therapeutic play and observation of the children, and several structured assessment tools, i.e. psychological tests which she performed on the children. The tests included the Vineland Adaptive Behavior Scales, Expanded Edition, and Structured Pediatric Psychosocial Interview.
In response to an objection below, the juvenile court inquired as to what information she relied upon in coming to her diagnosis in regard to Stephen during the first assessment. He inquired specifically of the witness whether her diagnosis was "based primarily on personal observation and standardized tests" and the witness answered affirmatively. (Emphasis added.) The witness also explained that she used the same information in reaching her diagnosis in regard to Kali. This meets the standard of Evid.R. 703 as interpreted in State v. Solomon, supra.
As to the second assessment, the psychologist relied upon records from CSB, records from the children's counselor who did testify, her previous evaluations, observations of the children in a clinical setting including a clinical interview and non-status exam with Structured Pediatric Psychosocial Interview and projective drawings. On cross-examination, the witness reiterated that any reliance on information supplied by others "wasn't a major portion of the diagnostic assessment."
Because the opinions of the psychologist were based in major part on facts or data perceived by her, the trial court did not err in allowing them into evidence. Accordingly, the assignment of error is without merit.
 Heather Fox's Assignment of Error V Stephen Fox's Assignment of Error IV The consideration of the report of the guardian ad litem by the Trial Court constitutes a violation of constitutional due process of law.
Appellants argue that the report of the guardian ad litem
denied them constitutional due process of law because the report was not submitted under oath and there was no opportunity to cross-examine the guardian ad litem. The assignment of error is without merit.
R.C. 2151.414(C) expressly states that the report of the guardian ad litem "shall not be submitted under oath." The Fifth District Court of Appeals considered a similar question in In reJoseph Nelson, a Minor Child (December 21, 1998), Stark App. No. 1998CA00037, unreported, 1998 Ohio App. LEXIS 6543 at *4-5 and stated:
 [A]ppellant would not have been permitted to cross-examine [the guardian ad litem] because cross-examination of the guardian ad litem would mean she would have to be sworn in and testify under oath, which is prohibited by R.C. 2151.414(C). Further, in the case of McDonald v. McDonald * * * (Jan. 31, 1994), Stark App. No. CA-9481, unreported, the Court explained that "in a juvenile proceeding, the Guardian Ad Litem's report is given to the court and counsel in the dispositional phase of the case, and hence, cross-examination is not a legal right." [Id] at *4-5. Appellant was not denied their right to call the guardian ad litem as a witness as no such right exists. Nor was appellant denied her substantive due process or procedural due process rights by the guardian ad litem's failure to testify.
(Emphasis added.)
That court thus found that the guardian ad litem may not testify under oath and that cross- examination of the guardian adlitem in the dispositional phase is not a legal right. The court also found that this procedure did not violate substantive or procedural due process. We agree with the conclusion of that court.
Appellants failed to raise the issue of the constitutionality of the statute or its application at the trial court level. The issue need not be heard for the first time on appeal. State v.Awan (1986), 22 Ohio St.3d 120, syllabus. Furthermore, Appellants failed to object to the submission of the report of the guardianad litem after the close of the hearing and also failed to request an opportunity to question the guardian ad litem at the hearing below. This court has held that "[a] fundamental rule of appellate review is that an appellate court will not consider any error that could have been, but was not, brought to the trial court's attention." Little Forest Med. Ctr. of Akron v. Ohio Civ.Rights Comm. (1993), 91 Ohio App.3d 76, 80. "Thus, a party has waived the right to appeal an issue that was in existence prior to or at the time of trial if that party did not raise the issue at the appropriate time in the court below." Id. Accordingly, the assignment of error is overruled.
 Heather Fox's Assignment of Error VI The Trial Court erred as a matter of law by failing to find that it was anticipated that one or both of the parents would be unable to provide an adequate permanent home for the children as required by R.C. 2151.414(E)(2).
By this assigned error, Heather Fox contends that the trial judge erred in failing to make a finding pursuant to R.C.2151.414(E)(2) that "chemical dependency of the parent * * * is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * * ." We find this error to be without merit for the following reasons.
This proceeding for permanent custody was brought on April 12, 1999, pursuant to R.C. 2151.413 and R.C. 2151.414, as amended and effective March 18, 1999. Pursuant to the statutes in effect at the time of the motion and hearing, the juvenile court may grant permanent custody to the agency upon two findings: (1) that it is in the best interest of the child, R.C. 2151.414(B)(1); and (2) that the child had been in the temporary custody of an appropriate agency as a neglected child "for twelve or more months of a consecutive twenty-two month period ending on or after [March 18, 1999.]" R.C. 2151.414(B)(1)(d). The juvenile court is required to make an additional finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent only where the child has not been abandoned, orphaned or has not been in temporary custody for twelve or more months of a consecutive twenty-two month period. See R.C. 2151.414(B)(1). This means that the juvenile court was not required to make a finding pursuant to R.C. 2151.414(E) as Appellant contends.
The juvenile court did find, by clear and convincing evidence, that it was in the best interest of the children to grant permanent custody to the agency. R.C. 2151.414(B)(1). In addition, the children had been in the custody of CSB and in foster care for nearly 30 months at the time of the permanent custody hearing. R.C. 2151.414(B)(1)(d). Therefore, the juvenile court was not required to make a finding that the children could not be placed with either parent within a reasonable time or should not be placed with either parent. Nor was it obligated to consider the factors listed in R.C. 2151.414(E) and determine the existence of any of the factors listed in that section. Accordingly, this assignment of error is overruled.
 Stephen Fox's Assignment of Error VI The Trial Court violated Mr. Fox's right to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 16 of the Ohio Constitution when the Trial Court required Mr. Fox to prove a permanent, stable placement for his children.
The juvenile court included the following statement in its Findings of Fact and Conclusions of Law:
 The custodial history demonstrates the inability of the parents to prove a permanent, stable placement as is needed for the child. One cannot be provided without a grant of permanent custody.
Appellant Stephen Fox asserts in this assignment of error that this statement by the juvenile court required him to prove that he could provide a permanent, stable placement for his children. The assignment of error is overruled.
It is obvious to us that the statement contains a typographical error. The statement makes sense only when the word "prove" is read as "provide." One does not "prove" a placement. One may provide a suitable placement. This point is made even in Appellant's brief where he claims that the juvenile court required him "to prove that he could provide a legally secure permanent placement." (Emphasis added.) The parallel construction of the following sentence in the court's order also supports this conclusion. Accordingly, this assignment of error is overruled.
 Heather Fox's Assignment of Error IV Appellant Heather Fox was denied effective assistance of counsel in violation of her due process rights when her counsel waived in writing written closing argument.
Appellant Heather Fox argues that her counsel's waiver of written final argument reflected ineffective assistance of counsel. The assignment of error is overruled.
In order to prevail on a claim of ineffective assistance of counsel, Appellant must show that her counsel's performance fell below an objective standard of reasonableness and, in addition, that she was prejudiced by her counsel's performance. Stricklandv. Washington (1984), 466 U.S. 668, 687-688, 80 L.Ed.2d 674, 693;State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. The court need not address the performance component if the issue is resolved by addressing the prejudice requirement.Strickland, 466 U.S. at 697, 80 L.Ed.2d at 699. To demonstrate prejudice, the appellant must prove that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different. Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
In State v. Keith (1997), 79 Ohio St.3d 514, 537 the Ohio Supreme Court considered the failure of counsel to make any opening or closing statement in a capital case in support of sparing appellant's life. The court rejected the concept that the failure to make an opening and closing statement will result in ineffectiveness per se. Id. The court also found that the appellant in that case failed to establish prejudice. Id.
Appellant advances the case of Herring v. New York (1975),422 U.S. 853, 45 L.Ed.2d 593, in support of her argument that waiver of closing argument by one's counsel is ineffective assistance of counsel. That case stands for the proposition that a trial judge may not deprive counsel for a criminal defendant of the opportunity to present a closing argument. Appellant, in the case at bar, was not, however, denied an opportunity to present closing argument by the trial judge. This court has previously recognized the distinction between a denial of closing argument by the trial court and a lack of argument presented by counsel. In that regard, we have concluded: "[A]bsent affirmative denial of closing argument, the lack of such argument is not a basis for reversal." State v. Yoder (February 5, 1986), Wayne App. No. 2099, unreported, at 7. Appellant has submitted no authority for the proposition that a waiver of closing argument must be exercised personally rather than by counsel.[2] The point becomes still more attenuated in a civil matter tried to the court as opposed to a jury. Upon these facts, we cannot find that waiver of closing argument was ineffective per se.
In addition, Appellant has not demonstrated a "reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, 42 Ohio St.3d 136, paragraph three of the syllabus. We cannot speculate upon the arguments that could have been mustered. Strong evidence proved the inability of Heather Fox to parent her children. Her visits with her children were extremely sporadic, she has a lengthy history of substance abuse, she made no efforts to utilize the homemaking services to help her maintain a clean, adequate home, and did not follow through on recommendations to obtain counseling.
We have reviewed the record and do not believe the matter cited by Appellant meets the Strickland standard. We do not find the waiver of closing argument to be ineffectiveness per se and we also find that Appellant has not demonstrated prejudice, i.e. were it not for counsel's error, the result clearly would have been different. Accordingly, this assignment of error is overruled.
 Stephen Fox's Assignment of Error V The Trial Court's decision granting the Wayne County Children's Services Board permanent custody of the children was against the manifest weight of the evidence.
When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In reOzmun (Apr. 14, 1999), Summit App. No. 18983, unreported, at 3. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175; see, also,State v. Otten (1986), 33 Ohio App.3d 339, 340. Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in this context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
Termination of parental rights is an alternative of last resort; however, it is sanctioned when necessary for the welfare of a child. In re Wise (1994), 96 Ohio App.3d 619, 624. In this case, before the juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, who is neither abandoned nor orphaned, it must make two findings: (1) that the grant of permanent custody to the agency is in the best interest of the child and (2) that "[t]he child has been in the temporary custody of a public children services agency * * * under one or more separate orders of disposition issued under R.C.2151.353 of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after [March 18, 1999.]" See R.C. 2151.414(B)(1) and R.C. 2151.414(B)(1)(d). Clear and convincing evidence is that which will produce in the trier of fact "a firm belief or conviction as to the facts sought to be established." In re Adoption of Holcomb (1985), 18 Ohio St.3d 361,368.
At the time of the hearing on this matter, the children had been in foster care for nearly 30 months. Therefore, the central question for determination by the juvenile court was whether a grant of permanent custody to CSB was in the best interest of the children.
In arriving at a determination of whether such an order is in the best interest of the child, the juvenile court shall:
[C]onsider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D)(1) through (5).
The factors in R.C. 2151.414(E)(7) to (11) which may also be considered are as follows:
 (7) The parent has been convicted of or pleaded guilty to one of the following:
 (a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 (b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 (c) An offense under division (B)(2) of section 2919.22
of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 (d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 (e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 (9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
(10) The parent has abandoned the child.
 (11) The parent has had parental rights involuntarily terminated pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child.
At the hearing in this matter, Dr. Marianne Bowden, a psychologist who did psychological assessments of the children, recommended individual therapy for both children, continued monitoring by a physician for attention deficit/ hyperactivity disorder, and consistency in their care. She stated that regardless of where the children reside, they will both need ongoing counseling and regular medical attention.
Cheryl Goudy, an outpatient therapist for the Counseling Center of Wayne and Holmes Counties, stated that she had been the therapist for the children since April, 1998, meeting with them twice a month. She stated that both children need a permanent secure environment and very attentive parenting in terms of love and attention, positive feedback, structure, discipline and a nice steady routine.
Rebecca Sapara, parole officer with the Adult Parole Authority, testified that Heather Fox is currently residing in a half-way house and expected to be released in the month of March, 1999.
Mark Boyce, Dale Slivka, David Patch, and Paul Griffith are all counselors who worked with Stephen Fox. They testified that he had an extensive substance abuse history and had been diagnosed as cocaine and alcohol dependent. Mr. Fox worked better with some counselors than others. Mr. Griffith was the last counselor and he felt that Mr. Fox was making progress. He testified that he has been counseling Mr. Fox since September, 1999. He stated that Mr. Fox has basically good values and was very agitated at first. Now he is calmer, his life is more in control, and he is trying to make changes in his lifestyle, including reportedly having obtained employment.
Edward Novak, a counselor at Your Human Resource Center, testified to observing Mr. Fox during a drug screen and saw him fill the sample cup with liquid from a container that had been hidden in his clothing on December 28, 1999.
Amy Michaels, the current caseworker from CSB, testified that Kali and Michael have four other siblings, ranging in age from 12 to 2. None of them live with Appellants, but instead are with other relatives. Mrs. Fox is the mother of all six children and Mr. Fox is the father of four.
Ms. Michaels testified that a case plan was implemented with several objectives: (1) a family assessment including interpersonal relationships and substance abuse assessments was to be completed with a licensed mental health psychologist to assist in making appropriate referrals and defining needed services for the family, and both parents were to maintain sobriety for a period of time before placement of the children back in the home, (2) case management services would be provided to monitor safety and security issues, as well as the basic needs of the children, (3) regular visitation with the children, (4) Mr. and Mrs. Fox were to attend parenting classes, (5) Mrs. Fox was to utilize homemakers services to assist her with housekeeping duties and (6) the parents were to obtain safe, stable adequate housing.
Testimony established that Dr. Marianne Bowden completed the family and chemical assessments. Mr. Fox was to pursue counseling and has done so with several different counselors. He eventually completed parenting classes while incarcerated. Mr. Fox attended 28 of 39 visitations before February, 1998. He was incarcerated from February 7, 1998 until November 22, 1998. He then attended 61 of 67 visitations until September 15, 1999. From October 20, 1999 to the time of the hearing he attended 35 of 38 visitations. The caseworker was able to confirm previous employment by Mr. Fox. He worked as a roofer with a friend and held several temporary jobs with Man Power. However, there is no evidence of current employment. The caseworker stated that Mr. Fox's apartment was appropriate for visitation, that it was clean and the children were safe. She also stated that his current three-bedroom house is appropriate for children. After November 20, 1999, Mr. Fox was required attend drug and alcohol counseling and also to submit to four random drug screens per month. In December, 1999, he submitted three out of four requested drug screens. During one of the screens, Mr. Fox was observed to have filled the sample cup with a liquid obtained from a container that had been concealed in his clothing. In January, 2000, he submitted three out of four requested drug screens. In February, 2000, he submitted only two out of five requested drug screens. Of the tests that were submitted, all either tested negative or showed inconclusive traces, indicating a negative result.
The current foster parent of the children testified that the behavior of the children in the last year had improved. At first, Stephen was very unruly, jumped on furniture and destroyed toys. Now he is more cooperative, understands that there are consequences when he breaks rules, and does not destroy toys or talk back. Kali was not as unruly as Stephen, but would talk back. Now she is more outgoing and more confident.
The maternal grandmother of the children, who has custody of two of the children's siblings, testified that she believed that Kali and Stephen should be placed in the permanent custody of CSB.
Wilma Speelman, a case-aid of CSB who supervised visits between Mr. Fox and the children for six months in early 1999, testified that she enjoyed the visits because his home was clean, the food he offered the children was well-balanced, and the activities were positive.
Marilyn Connick, a certified daycare provider, testified that Mr. Fox had contacted her to make sure she had openings for his children.
The report of the guardian ad litem recommended that permanent custody be awarded to CSB and also indicated that Stephen did not wish to live with his father. The guardian adlitem stated in her report that Mr. Fox has demonstrated a strong commitment to the children in terms of complying with the case plan requirements other than those involved in abstaining from illegal drug use. In that regard he has been evasive and unresponsive with respect to complying with the random drug screen requirements ordered by the juvenile court in November, 1999.
The juvenile court recognized that while Mr. Fox had participated in substance abuse treatment, his failure to comply with the case plan in terms of random drug screenings must be considered as a negative factor in evaluating the future stability of the home. The court also found that there appears to be no significant bond between the children and their parents.
In conclusion, the juvenile court found by clear and convincing evidence that it was in the best interest of the children to grant the motion for permanent custody and that the children had been in foster care for more than twelve of the past twenty-two months. The court found that any relationship and interaction between the children and parents, siblings and other relatives was outweighed by the need for a stable, permanent placement. The court further found that the custodial history demonstrates the inability of the parents to provide such placement. The court also found that the parents have demonstrated a lack of commitment to resolving the issues that have existed since CSB became involved in this case over three years ago. Drug dependence, according to the court, remains a problem that severely impacts the abilities of both Mr. and Mrs. Fox to parent their children.
Upon review of the evidence, this court concludes that the juvenile court's finding that a grant of permanent custody to CSB is in the children's best interest is not against the manifest weight of the evidence. Accordingly, this assignment of error is overruled.
Finding merit in none of the errors assigned for review, this court affirms the judgment of the juvenile court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ LYNN C. SLABY
FOR THE COURT, BAIRD, P. J., WHITMORE, J., CONCUR.
[1] Mr. Fox was later granted habeas corpus relief upon a common pleas court finding that R.C. 2967.28, regarding post-release control, was unconstitutional. Fox v. Maurer (Oct. 19, 1999), Wayne C.P. No. 99-CV-0370, unreported; but, see,Maurer, v. Fox (Sept. 13, 2000), Wayne App. No. 99CA0063, unreported, where this court reversed the previous judgment in reliance on Woods v. Telb (2000), 89 Ohio St.3d 504, paragraph one of the syllabus.
[2] Appellant has cited to State v. Robb (2000), 88 Ohio St.3d 59,73. In that case the facts reveal that the defendant did personally decide to waive final argument, but the Ohio Supreme Court did not hold as a matter of law that the defendant must personally waive closing argument for such waiver to be valid.